IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Western Division
At Cincinnati

AMY HERBST and JAMES HERBST, )
)
    Plaintiffs, )
)
v. ) Case No. _____
)
THE UNITED STATES OF AMERICA, )
)
Serve: )
)
    The Honorable Carter M. Stewart )
    United States Attorney )
    Southern District of Ohio )
    303 Marconi Blvd, Ste. 200 ) **1:14CV055**
    Columbus, OH 43215 )
) **J. BARRETT**
    And )
)
    The Honorable Eric H. Holder, Jr. )
    United States Attorney General )
    The Department of Justice )
    950 Pennsylvania Avenue, N.W. )
    Washington, D.C. 20530-0001 )
)
    Defendant. )

## COMPLAINT

COME NOW Plaintiffs Amy Herbst and James Herbst, by and through counsel, and for their cause of action against the United States of America allege and aver as follows:

### Introduction

1. In this action Plaintiffs Amy Herbst and James Herbst seek damages under the Federal Tort Claims Act for injuries arising out of medical care negligently provided to Plaintiff Amy Herbst by health care providers who were employees of the United States during the

delivery of the Herbst's son at Blanchfield Army Community Hospital, Fort Campbell, Kentucky, in February 2012.

## Jurisdiction and Venue

2. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, a federal statute. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b).

3. Prior to the institution of this action and on or about August 16, 2012, Plaintiffs filed claims with the United States Army as required by 28 U.S.C. § 2675(a). The United States Army has not acted upon such claims. Accordingly, Plaintiffs have filed this action in accordance with 28 U.S.C. § 2675(a).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because Plaintiffs reside in the state of Ohio. Venue is proper in this division of the Southern District of Ohio, Western Division, at Cincinnati, as Plaintiffs reside in Hamilton County, Ohio.

## Parties

5. Plaintiff Amy Herbst and James Herbst are individuals and wife and husband respectively, residing at 275 Hilltop Lane, Wyoming, Ohio 45215.

6. Defendant United States of America, at all relevant times hereto, owned and operated Blanchfield Army Community Hospital (BACH), Fort Campbell, Kentucky.

7. At all relevant times hereto, Defendant United States of America employed various health care providers to attend to patients at Blanchfield Army Community Hospital, including, without limitation, Certified Nurse-Midwife Tiffany Williams.

8. Defendant the United States of America is liable for the negligent acts of its employees pursuant to 28 U.S.C. § 2671, *et seq.*

## Factual Allegations

9. On or about February 27, 2012, Plaintiff James Herbst was a Staff Sergeant in the U.S. Army serving at Fort Campbell, Kentucky.

10. Plaintiff Amy Herbst is a classically trained opera singer who has performed with the Nashville Opera. On or about February 27, 2012, Plaintiff Amy Herbst resided with her husband at Fort Campbell, Kentucky.

11. On February 27, 2012, Plaintiff Amy Herbst presented to BACH. She was 39 weeks pregnant and had experienced a spontaneous rupture of membranes which is indicative of the onset of labor. This was Plaintiff Amy Herbst's first pregnancy.

12. Upon presentation to BACH, Plaintiff Amy Herbst was assessed by Dr. Lisa Pierson, an employee of the United States.

13. During her assessment by Dr. Pierson, Dr. Pierson told Plaintiff Amy Herbst that she intended to administer Pitocin in order to stimulate contractions. Plaintiff Amy Herbst told Dr. Pierson she preferred not to have Pitocin administered until she saw how her labor progressed. Dr. Pierson agreed to withhold Pitocin.

14. Notwithstanding Dr. Pierson's agreement not to immediately administer Pitocin, within minutes of Plaintiff Amy Herbst's initial assessment, a nurse and employee of the United States administered Pitocin without first obtaining the consent of the Plaintiff Amy Herbst.

15. Certified Nurse-Midwife (CNM) Tiffany Williams, an employee of the United States, monitored Mrs. Herbst's labor. Her first stage of labor lasted 3 hours and 30 minutes. Her second stage lasted 50 minutes. CNM Williams reported, in Plaintiff Amy Herbst's medical record for the admission at BACH, that she performed a midline episiotomy. Thereafter, a male

infant was delivered. He weighed 7 lb. 11 oz. and had Apgar scores of 8 and 9 at one and five minutes respectively.

16. CNM Williams' reported repairing the episiotomy with the following annotation in the medical record: "Midline episiotomy with 2d degree extension repaired with 3-0 vicryl".

17. At no time during the labor and delivery process was Plaintiff Amy Herbst informed about the possible need for or the risks and benefits of an episiotomy. At no time was she asked to consent, nor did she consent, to the performance of an episiotomy. Further, no physician was called to assess or repair and no physician assessed or repaired the episiotomy.

18. While in recovery, Plaintiff Amy Herbst experienced severe perineal pain. Nevertheless, on February 29, 2012, she was discharged on Colace and Motrin and was instructed to return in 6 to 8 weeks for a postpartum exam.

19. After her discharge, Plaintiff Amy Herbst began to experience fecal urgency and incontinence, including periodic leaking of stool and excessive flatulence.

20. Plaintiff Amy Herbst returned to BACH on April 10, 2012, for postpartum follow-up. At that visit, she complained that she could feel gas coming out of her vagina and was also experiencing difficulty controlling bowel movements. Certified Nurse Midwife Jessica Jensen, an employee of the United States, performed a physical examination of Plaintiff Amy Herbst and reported that Plaintiff had suffered a "complete breakdown of the episiotomy and perineum and the external sphincter is disrupted and the vagina and rectum are basically connected without any perineal body."

21. After further evaluation and assessment Plaintiff Amy Herbst was informed that she had suffered a 4th degree episiotomy which was causing her incontinence and flatulence. A consult to a colo-rectal surgeon was ordered.

4

22. On June 19, 2012, Plaintiff Amy Herbst was seen in the Colon and Rectal Surgery Clinic at the Vanderbilt University Medical Center. Perineal examination revealed "a 4th degree healing episiotomy with direct incision through the perineum". The colo-rectal surgeon noted that the 4th degree episiotomy scar "is likely affecting her external anal sphincter resulting in this near incontinence."

23. Health care providers at Vanderbilt advised Plaintiff Amy Herbst that to treat the damage to her perineum they would have to perform "a sphincter and perineal body reconstruction." They noted that this would likely not eliminate the lack of control of flatus and may require additional surgeries in the future.

24. Plaintiff Amy Herbst was also advised that once the repair was performed all future pregnancies would require delivery by Cesarean section. When the Plaintiff expressed her concern regarding the risk to her singing career posed by a Cesarean section, health care providers "encouraged her to consider potentially delaying the procedure until she [had] completed all of her reproduction". Accordingly, Plaintiff Amy Herbst elected to post-pone the repair of her perineum and anal sphincter.

25. As a result of her incontinence and excessive flatulence, Plaintiff Amy Herbst has been unable to work as a professional opera singer.

### COUNT I – Medical Malpractice (Amy Herbst)

26. Plaintiffs hereby incorporate by reference paragraphs 1-25 as though fully set forth herein.

27. Employees of the United States, including, without limitation, CNM Tiffany Williams, while acting within the course and scope of their employment, breached the standard of care in the care and treatment of Plaintiff Amy Herbst by:

5

a. Failing to supervise adequately CNM Tiffany Williams as she provided medical care to the Plaintiff Amy Herbst;

b. Failing to obtain Plaintiff Amy Herbst's informed consent prior to performing an episiotomy;

c. Performing an episiotomy without Plaintiff Amy Herbst's consent;

d. Performing an unnecessary episiotomy;

e. Misdiagnosing shoulder dystocia;

f. Failing to use appropriate, alternative measures to address shoulder dystocia prior to performing an episiotomy;

g. Improperly performing a episiotomy resulting in a 4th degree midline episiotomy;

h. Failing to properly diagnose a 4th degree episiotomy and misdiagnosing a 2nd degree episiotomy;

i. Improperly repairing Plaintiff Amy Herbst's episiotomy; and

j. Failing to call-in or consult a physician to evaluate and/or repair the episiotomy.

28. The negligent acts and omissions described above proximately caused injury to Plaintiff Amy Herbst, including but not limited to:

a. Unnecessary physical injury and damage to her body, specifically her perineum;

b. Damage to her sphincter muscles;

c. Limitations on her sexual function and pain and discomfort during sexual intercourse;

d. Incontinence;

e. Excessive flatulence;

29. As a direct and proximate result of the negligence described herein, Plaintiff Amy Herbst will require future medical care including, without limitation, future surgical procedures to repair the defect in her perineum and the damage to her sphincter muscles.

30. As a direct and proximate result of the negligence described above, Amy Herbst has incurred and will continue to incur damages including, but not limited to, the following:

a. Pain and suffering;

b. Mental anguish and emotional distress;

c. Embarrassment;

d. Inconvenience;

e. Loss of consortium;

f. Future medical expenses;

g. Economic losses, including loss of income.

### COUNT II – Loss of Consortium (James Herbst)

31. Plaintiffs incorporate by reference paragraphs 1-30 as though fully set forth here.

32. The negligent acts and omissions described herein have proximately caused Plaintiff James Herbst to suffer the loss of consortium of his spouse Amy Herbst and will continue to cause him to suffer such loss of consortium.

WHEREFORE, Plaintiffs Amy Herbst and James Herbst pray that judgment be entered in their favor against the United States of America in the amount of Two Million Five Hundred Thousand ($2,500,000.00) Dollars for their damages plus costs, and such other relief as the Court deems just and proper.

**Respectfully submitted,**

S/Charles M. Allen
Charles M. Allen
Virginia State Bar Number 30183
William F. Demarest III
Virginia State Bar Number 78428
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Phone: (804) 346-0600
Fax: (804) 346-5954
callen@goodmanallen.com
wdemarest@goodmanallen.com

*To be admitted Pro Hac Vice*


And

Gary J. Sergent (KY63166, OH0003031)
O'Hara, Ruberg, Taylor, Sloan & Sergent
25 Town Center Boulevard, Suite 201
Covington, Kentucky 41017
(859) 331-2000
FAX (859) 578-3365
gsergent@ortlaw.com

*Local Counsel for Plaintiffs*

8